# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Samuel Leshawn Jackson,

                    Petitioner,        Case No. 17-10906

v.                                     Judith E. Levy
                                       United States District Judge
Kris Taskila,

                    Respondent.   Mag. Judge Patricia T. Morris

_____/

# OPINION AND ORDER DENYING (1) THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Before the Court is Samuel Leshawn Jackson's ("Petitioner") *pro se* amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 22.) He challenges his convictions for two counts of assault with intent to murder, Mich. Comp. Laws § 750.83, three counts of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and one count of carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226. Petitioner was sentenced to 235 months to forty years for assault with intent to murder, two years for each of the felony-firearm convictions, and thirty months to

five years for carrying a dangerous weapon. For the reasons set forth below, Mr. Jackson's amended petition for a writ of habeas corpus is denied.

## I.   Background

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. The Court quotes the relevant facts that the Michigan Court of Appeals considered, which are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The two victims—Marcel Wilson (Wilson) and Richard Fowler (Fowler)—were driving in Saginaw when they decided to stop at a gas station. Fowler went into the station, and surveillance video showed that J'ion Parker (Parker) left the store shortly thereafter. At the same station, Keondre Solomon (Solomon) was pumping gas into a white Dodge Charger. Parker got into the backseat of the Charger, and defendant was seated in the front passenger seat of the Charger.
>
> Wilson and Fowler left the gas station and drove down Williamson Street when they noticed a car speeding up behind them. Suddenly, the Charger pulled alongside them, and the occupants began shooting at Wilson and Fowler. Eventually, both vehicles crashed. Fowler and Wilson were shot and severely wounded. They required multiple surgeries for the injuries they sustained in the shooting and crash.

Parker testified that, after the crash, he, Solomon, and defendant fled the scene. He also testified that while they were running, defendant asked what to do with a gun and then he tossed it to Parker. He then just threw it away from himself. Parker later identified defendant as the shooter.

A small amount of blood was present above the front passenger seat of the Charger. DNA testing revealed it matched defendant's blood. Further, Solomon's girlfriend reported the Charger as stolen, and after searching her house, the police found a spent .40–caliber cartridge that matched the casings from the scene and from a gun Solomon turned over to the police.

A police officer also testified that defendant and Parker resided on the east side of Saginaw, and there were rivalries and conflicts between the east side and south side of Saginaw where the shooting victims resided.

Defendant was convicted of two counts of assault with intent to murder, three counts of felony-firearm, and carrying a dangerous weapon with unlawful intent.

*People v. Jackson*, No. 319398, 2015 WL 3648932, at *1 (Mich. Ct. App. June 11, 2015) (footnote omitted). The Michigan Supreme Court denied Petitioner leave to appeal his conviction. *People v. Jackson*, 498 Mich. 951 (2015).

On March 21, 2017, Mr. Jackson filed a habeas petition with this Court. (ECF No. 1.) He included the following claims in his petition:

3

1.   Mr. Jackson is entitled to a writ of habeas corpus where the lower court[s'] decisions denied his state and federal constitutional rights to a fair and impartial trial and due process of law where the trial court erred when it excluded prospective jurors for cause without first permitting the defense the opportunity to voir dire;

2.   Mr. Jackson is entitled to a writ of habeas corpus where the lower co[u]rt[s'] decisions denied his state and federal constitutional rights to due process of law and a fair trial guaranteed through the 5th and 14th Am[endments] where the trial court abused its discretion [by allowing] prejudicial and irrelevant evidence to be admitted into the trial proceedings;

3.   Mr. Jackson is entitle[]d to a writ of habeas corpus where the lower courts['] decision[s] denied his state and federal constitutional rights to confrontation and a fair trial and due process of law guaranteed him through the 5th and 14th Am[endments] when [the] prosecution committed misconduct by calling a witness to testify [who] invoked his 5th Amendment rights depriving defendant of a fair and impartial trial.

(ECF No. 22, PageID.1063; *see also Id.* at PageID.21.) Because Mr. Jackson did not exhaust his claims in state court, this Court stayed his habeas petition. *See Jackson v. Lesatz*, No. 17-CV-10906, 2019 WL 5578036 (E.D. Mich. Oct. 29, 2019).

On May 20, 2019, while Petitioner's habeas petition was pending, he also filed a post-conviction motion for relief from judgment for his counsel's failure to object to the sentencing guideline calculation based on "inaccurate information" and ineffective assistance of appellate counsel for failing to raise the issue on appeal. (ECF No. 32-18.) This motion was denied. (ECF No. 32-19 (*People v. Jackson,* No. 12-38143-FJ-3 (Saginaw Co. Cir. Ct., June 17, 2019).)

Petitioner filed a successive motion for relief from judgment with the state court, which contained the three claims from his initial habeas petition as well as an additional ineffective assistance of counsel claim. However, under MCR 6.502(G), a defendant may file "one and only one motion for relief from judgment" unless the defendant shows that there is a retroactive change in law or new evidence was discovered entitling them to relief. Because Mr. Jackson failed to show that he was entitled to file another motion, the trial court dismissed the successive motion. (*See* ECF No. 32-20 (*People v. Jackson,* No. 12-038143-FJ-3 (Saginaw County Circuit Court, March 5, 2020))). The Michigan Court of Appeals affirmed the trial court's dismissal of the motion (ECF No. 32-21 (*People v. Jackson*, No. 354484 (Mich. Ct. App. October 27, 2020))), as did the

Michigan Supreme Court (*See People v. Jackson*, 507 Mich. 931 (Mich. 2021) (unpublished table decision)).[1]

After Mr. Jackson exhausted his state-court appeals, this Court lifted the stay and permitted him to file an amended habeas petition (ECF No. 27), which contained an additional ineffective assistance of counsel claim:

> 4. Mr. Jackson is entitled to a writ of habeas corpus where the lower courts denied his state and federal constitutional rights to effective assistance of counsel, a fair and impartial trial, due process of law guaranteed him through the 5th, 6th, and 14th Amendments when trial attorney failed to investigate and present available alibi witnesses.

(ECF No. 22, PageID.1064.)

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

---

[1] As discussed in Section III.D, Mr. Jackson argued in his 2019 motion for relief from judgment that he had ineffective assistance of counsel because of his attorney's failure to challenge an error in his sentencing calculation, whereas he argued that he had ineffective assistance of counsel for his attorney's failure to investigate and call alibi witnesses in his 2020 motions for relief from judgment. (*Compare* ECF No. 32-19 *with* ECF No. 32-20; ECF No. 32-21; *People v. Jackson*, 507 Mich. at 931.)

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state-court's conclusion is opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal court reviewing a habeas petition may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

7

erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410–11.

"[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations and citations omitted). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for [habeas] relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

28 U.S.C. § 2254(d), as amended by AEDPA, preserves federal court authority to grant habeas relief only "in cases where there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*

## III. Discussion

### A. Claim 1

Petitioner argues that the trial court violated his state and federal constitutional rights to due process by excluding prospective jurors with misdemeanor convictions for cause without first permitting defense counsel to question those jurors individually regarding any potential bias.

On the first day of trial, the trial court judge indicated that due to limited space in the courtroom, she preferred to make a record of those jurors that the prosecutor indicated would be challenged and excused for cause, rather than bring them into the courtroom. There were three panels of jurors who were called to serve. The prosecutor produced a list of the prospective jurors that would be challenged for cause based on their criminal histories. *See* MCR 2.511(D)(10) ("It is grounds for a challenge for cause that the person: . . . is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been

9

accused by that party in a criminal prosecution"). The trial court judge then reviewed the criminal histories of each of the jurors and dismissed all jurors previously convicted by the Saginaw County Prosecutor's Office ("SCPO"). (*See* ECF No. 10-10, PageID.306–311.)

Trial counsel objected to the court's limited examination of the jurors with SCPO convictions and stated his belief that the court rules and statute were "overly broad" and that "there should be an inquiry as to any reason to exclude anyone." (*Id.*, PageID.305.) Trial counsel placed the same objection on the record for all twenty-three individuals who were examined and then excused for cause because the SCPO previously convicted them. (*See Id.* at PageID.305–311); *see also* MCR 6.412(D)(2) ("If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel.").

The prospective jurors with SCPO convictions were excused from service based on MCR 2.511(D)(10) and MCR 6.412(D)(1). Petitioner acknowledges that once a juror falls within the

10

parameters of one of the grounds listed in the court rules or statute,
the trial court is without discretion to retain that juror. (ECF No.
22, PageID.1083.) However, he challenges their excusal because the
Michigan Court Rules and statute do not prohibit individuals who
have been convicted of misdemeanors from state-court jury service.
(*See* ECF No. 22, PageID.1082.)

The Michigan Court of Appeals rejected Petitioner's claim,
finding that the court individually examined the credentials of each
prospective juror who had been convicted in Saginaw County:

> At the beginning of jury selection, the trial court
> requested a list of prospective jurors who had been subjected
> to prosecution by the Saginaw County Prosecutor's Office. The
> trial court explained that it was going to examine each of the
> prospective jurors on the list individually, but without
> actually bringing them into the courtroom. The court
> indicated that it would consider the prosecutor's challenge for
> cause based on each prospective juror's criminal record.
> However, defense counsel objected, primarily contending that
> MCR 2.511(D)(10) was overbroad because it did not provide
> for an inquiry into the potential bias of each prospective juror.
> Nevertheless, the trial court granted the prosecutor's request
> to dismiss 20 of the potential jurors for cause pursuant to
> MCR 2.511(D)(10).
> "A prospective juror is subject to challenge for cause on
> any ground set forth in MCR 2.511(D) or for any other reason
> recognized by law." MCR 6.412(D)(1). Moreover, cause to

11

excuse a prospective juror exists when he or she "has been accused by [the challenging party] in a criminal prosecution." MCR 2.511(D)(10). "If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MCR 6.412(D) (2).

Defendant does not contest that, pursuant to MCR 6.412(D) and MCR 2.511(D), there was cause to excuse jurors who had been subjected to prosecution by the Saginaw County Prosecutor's Office. Instead, he argues that he should have been permitted to question the jurors before dismissal. Defendant highlights the phrase "If, *after the examination of any juror,* the court finds" that grounds for cause are present, the court may dismiss the juror. MCR 6.412(D)(2)(emphasis added). However, defendant provides no support for the proposition that the *defendant* is entitled to examine each juror. In fact, the language in the court rule only refers to the trial court excusing the jurors after examination. Further, if grounds for challenging a juror for cause are present, the court "must" dismiss the prospective jurors. [*People v. Eccles,* 260 Mich. App. 379, 383 (2004)].

Moreover, MCR 2.511(D) merely provides that "[a] juror challenged for cause *may* be directed to answer questions pertinent to the inquiry." (Emphasis added). This language denotes discretion. In other words, the trial court has discretion to allow such questioning, but defendant highlights no language that requires the trial court to permit such questioning.

Further, even if the prospective jurors were excused improperly, defendant has not demonstrated prejudice or that he was denied an impartial jury. "Failure to comply with the provisions of this chapter shall not . . . affect the validity of a

jury verdict unless . . . the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial." MCL 600.1354(1). In short, defendant fails to demonstrate how he was prejudiced in any way from the trial court's actions. He is not entitled to relief.

*People v. Jackson*, 2015 WL 3648932, at *2.

In his habeas claim challenging jury selection, Petitioner fails to demonstrate an unreasonable application of state law or a violation of his federal constitutional rights. The record shows that the trial court dismissed jurors who were previously convicted by the SCPO because they had previously "been accused by that party in a criminal prosecution," an enumerated ground for exclusion from jury service. *See* MCR 2.511(D)(10). Therefore, Petitioner's assertion that the Michigan rules and statutes do not exclude people convicted of misdemeanors from jury service is an inadequate basis for habeas relief. (ECF No. 22, PageID.1082.) "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Petitioner has not produced any Supreme Court precedent to support his position that he had a right

13

to examine the disqualified jurors for bias either. Accordingly, Petitioner is not entitled to habeas relief on his first claim.

## B.    Claim 2

Petitioner claims that he was denied his state and federal constitutional rights to due process when the trial court allowed prejudicial and irrelevant evidence to be admitted into the trial proceedings. He argues that the admission of a group photo and a police officer's lay opinion testimony that the individuals in the photo were displaying hand signs associated with gangs on the east and south sides of Saginaw violated his right to a fair trial. (*See* ECF 10-15, PageID.654.) Additionally, he contends that the trial judge erred in permitting the prosecutor to introduce evidence that J'ion Parker, a trial witness, whispered to his mother, "I can't live my life as no snitch, though. I can't do it. It would make me want to kill myself if I was a snitch. They gonna kill me if I snitch." *People v. Jackson*, 2015 WL 3648932, at *4. The Court rejects both claims.

### i.    *Gang Evidence*

The prosecution sought to introduce the photograph to support a theory that animosity between the neighborhoods on the east and south

sides of Saginaw motivated the shooting in the case. Defense counsel opposed admission of the photograph, arguing that it would bring the issue of gang activity before the jury. (*See* ECF 10-15, PageID.650.)

The photograph at issue depicts Petitioner, Mr. Parker, and Davario Lipsey "[m]aking hand gestures that are known to be associated with different neighborhoods within the City of Saginaw." (*Id.* at PageID.654.) After hearing argument as to the admissibility of the photograph, the trial court judge ruled that the photograph was admissible, explaining:

> I understand [defense counsel's] point, but you've had the photos that are being introduced, you've had the maps. [The prosecutor] said from the beginning he thought it was a neighborhood feud-type issue; south side/east side. So that's the reason I'm letting it in, and that is the reason I think it's relevant and he's allowed to bring it in.

(*Id.* at PageID.653.)

Detective Gerow testified that during his years as a police officer working in Saginaw, he learned about the animosity between neighborhoods. Regarding Petitioner's hand gesture in the photograph, Detective Gerow testified that:

Q  Explain the hand gestures that we're seeing.

15

A  Well, again, he's doing down with the sunny side. Then he's got the east side, the E pointing like that, towards the sunny side.

Q  Okay. Pointed so he's got his left hand down in a derogatory gesture for sunny side?

A  Correct.

Q  And his -- with his right hand he's doing this sign for east side?

A  Yup.

(*Id.* at PageID.655.) Gerow further testified that the location of the various homes where the defendants resided would be considered to be on the east side of Saginaw and that he has encountered assaultive-type incidents involving individuals from the east side causing harm to south-siders and vice versa. (*See* ECF 10-15, PageID.655.)

The Michigan Court of Appeals rejected Mr. Jackson's appeal of the admission of the photograph and the testimony from the police officer because:

> [T]here was no specific testimony about gangs, gang membership, gang culture, or that defendant acted in conformity with character traits commonly associated with gang members. Neither the detective nor any other witness testified that defendant or any of the involved parties were members of gangs. Rather, the prosecution's theory was that there was general animosity between neighborhoods and

16

assaultive-type conduct occurring between the east and south sides, which was a possible explanation for defendant's motive in committing the crime. *People v. Unger,* 278 Mich. App. 210, 223 (2008) ("Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant."). Defendant does not explain why this evidence was not relevant to show he was a willing participant in an apparent random act of violence. Further, the trial court mitigated any unfair prejudice when instructing the jury that there was no evidence that defendant was involved in these other assaultive acts. See *People v. Graves,* 458 Mich. 476, 486 (1998).

Moreover, any error in admitting this evidence was harmless beyond a reasonable doubt. [*People v. Lukity,* 460 Mich. 484, 495 (1999).] After seeing the victims at the gas station, defendant and his two companions initiated a car chase. Defendant then shot multiple times at the two victims, seriously wounding them. Parker testified that defendant was the shooter, and that defendant tossed him the gun when they were fleeing the scene. DNA evidence definitively placed defendant in the Charger. In sum, defendant was identified as the shooter and DNA evidence placed him in the vehicle.

When evaluating "the effect of the error . . . in the context of the untainted evidence," we find that it is not "more probable than not that a different outcome would have resulted without the error." *Lukity,* 460 Mich. at 495.

*People v. Jackson*, 2015 WL 3648932, at *3–4.

As previously set forth, "it is not the province of a federal habeas

court to reexamine state-court determinations on state-court questions."

*Stewart v. Winn*, 967 F.3d 534, 541 (6th Cir. 2020) (quoting *McGuire*, 502

17

U.S. at 67–68). In habeas review of a state law case, a federal court is limited to deciding whether a state-court conviction violates the Constitution, laws, or treaties of the United States. *McGuire*, 502 U.S. at 68. "[E]rrors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).

Petitioner's claim that this evidence should have been excluded under MRE 403 for being more prejudicial than probative does not allege a violation of the Constitution, laws, or treaties of the United States. "The Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis original). Indeed, even the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief because it involves a state-law evidentiary issue. *See, e.g.*, *Granderson v. Jackson*, No. 1:17-CV-11355, 2020 WL 2112350, at *8 (E.D. Mich. May 4, 2020).

The Michigan Court of Appeals' decision that the admission of the contested trial testimony was not "fundamentally unfair" was also reasonable. *Blackmon,* 696 F.3d at 557. The Michigan Court of Appeals found that the contested trial testimony was relevant to explain why Petitioner would engage in a violent act against strangers on the south side of Saginaw. And this Court must defer to the state court's determination of state law. *See McGuire*, 502 U.S. at 67. Assuming that this evidence could be construed to support a finding that Petitioner was a gang member, its admission did not render his trial fundamentally unfair because it was relevant to his criminal motive. *See Blackmon,* 696 F.3d at 556–57 (no habeas relief where evidence of gang membership was relevant to witness bias and criminal motive).

### ii.   *Evidence of Mr. Parker's Snitch Comment*

Petitioner also asserts that the trial judge erred in permitting the prosecutor to introduce evidence that Mr. Parker whispered to his mother, "I can't live my life as no snitch, though. I can't do it. It would make me want to kill myself if I was a snitch. They gonna kill me if I snitch." *People v. Jackson*, 2015 WL 3648932, at *4.

19

The Michigan Court of Appeals rejected this claim finding that Petitioner "[p]rovides only cursory treatment of [Mr. Parker's snitch comment] with limited citation to supporting authority." *Id.* The Michigan Court of Appeals also quoted the trial court's limiting instruction in connection with this testimony:

> I'm going to give you a limiting instruction regarding that testimony, that evidence that you just heard, referring to Witness Parker's statements at the police station. That's been offered to explain why the witness may have been reluctant with the police, and there may be an issue of credibility as to that witness. And so you may consider the evidence as to the witness credibility.
> * * *
> All right. I just wanted to add a cautionary instruction, ladies and gentleman, also, that there is no evidence of threats of any kind by either of the defendants here, or of threats or intimidation of any kind, by them or anybody associated with them.
>
> So with that, again, it just may go to that witness's credibility, but it certainly doesn't implicate these defendants as having done or said anything.

*Id.*

The admission of the "snitch" testimony does not entitle Petitioner to habeas relief. First, the Michigan Court of Appeals reasonably concluded that it was relevant and admissible because it explained Mr.

Parker's inconsistent statements and thus dealt with his credibility as a witness. *See Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, at *3 (6th Cir. Nov. 30, 2016). Second, Mr. Jackson fails to show that Mr. Parker's comment that he himself feared being labeled a snitch unfairly prejudiced Mr. Jackson because there was no evidence presented that Mr. Jackson or any of his associates had threatened Mr. Parker. *See United States v. Deitz*, 577 F.3d 672, 689 (6th Cir. 2009) (evidence of witnesses' previous participation in the witness protection program was relevant and the prosecutor did not attempt to imply that the defendant himself was threating witnesses). Third, the trial-court judge specifically instructed the jury not to construe Mr. Parker's comment as evidence of Mr. Jackson's wrongdoing, and under Michigan law and federal law, the jury is presumed to have complied with the trial-court's instructions. *See People v. Graves*, 458 Mich. 476, 486 (1998); *Shaieb v. Burghuis*, 499 F. App'x 486, 495 (6th Cir. 2012). Accordingly, the admission of this evidence did not deprive Petitioner of a fair trial.

Petitioner is not entitled to relief on his second claim.

**C.    Claim 3**

Petitioner next claims he was denied a fair trial because of prosecutorial misconduct. Specifically, Petitioner claims that the prosecutor improperly called J'ion Parker as a witness because he knew in advance that Mr. Parker would invoke his Fifth Amendment rights in front of the jury.

The Michigan Court of Appeals denied this claim finding no evidence to support a finding that the prosecution knew or should have known that Parker would plead the Fifth Amendment:

> The prosecution knew that Parker had testified— without pleading the Fifth Amendment—at three separate preliminary examinations. While Parker told his mother that he would not "snitch," he then provided a statement to the police. Further, the prosecution's opening statement revealed its expectations that Parker would testify. The prosecution stated that it expected the jury would hear from Parker "one way or another." Although the prosecution expected Parker would be a reluctant witness or might not appear at trial, there is no indication that it knew Parker would invoke the Fifth Amendment. In fact, at the September 5, 2012 court proceeding, the prosecution asked the court to advise Parker that he was required to appear for trial or else he would be held in contempt and detained as a material witness.
>
> Further, immediately after Parker pleaded the Fifth, the trial court excused the jury and asked the prosecutor if he knew Parker "was going to do this." The prosecutor responded, "Absolutely not." Parker testified that he only told

the prosecution that he "didn't remember nothing" and that he never spoke about the Fifth Amendment privilege.

Because there is no evidence that the prosecutor knew or even should have known that Parker was going to plead the Fifth Amendment, we find no error warranting reversal. [*People v. Paasche,* 207 Mich. App. 698, 709 (1994)].

*People v. Jackson*, 2015 WL 3648932, at *5 (internal footnote omitted).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Rodriguez v. Jones*, 478 F. App'x 271, 275 (6th Cir. 2012) (quoting *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Millender*, 376 F.3d at 527 (quoting *McGuire*, 502 U.S. at 72). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Prosecutorial misconduct may occur when a prosecutor makes "a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privileges." *See Namet v. United States*, 373 U.S. 179, 186 (1963). Indeed, a witness' invocation of the Fifth Amendment privilege can create an "unfavorable inference that the witness and the defendant engaged in criminal conduct together, or that the witness has evidence that inculpates the defendant." *Thomas v. Garraghty*, 18 F. App'x 301, 308 (6th Cir. 2001). However, "merely calling a witness to the stand, even knowing that he will assert Fifth Amendment rights, does not rise to the level of a *constitutional* violation." *Id.* at 311 (emphasis in original) (citation omitted). And, the Supreme Court has expressed reluctance to find that a prosecutor deliberately sought to gain from "few" assertions of the Fifth Amendment privilege. *Namet*, 373 U.S. at 189 (four invocations of the Fifth Amendment did not show "deliberate attempts by the Government to make capital out of witnesses' refusals to testify."). Likewise, invocation of the Fifth Amendment privilege is less likely to constitute reversible error where other evidence supports the inference that the invocation of the privilege supports. *See id.*

The Michigan Court of Appeals denied relief finding that there was no indication that the prosecution should have known that Parker was going to invoke his Fifth Amendment privilege. It was not unreasonable to find that the prosecution did not know that Mr. Parker would invoke his Fifth Amendment privilege where Parker had already testified at three separate preliminary examinations without invoking the Fifth Amendment. Moreover, even if the prosecutor had known that Mr. Parker would invoke the Fifth Amendment regarding the "snitch" statement, this assertion of the privilege would not be the only evidence bolstering the inference of Petitioner's criminal activity in this case. Petitioner's third claim is therefore without merit.

### D.    Claim 4

Petitioner argues that trial counsel's failure to call several alibi witnesses was ineffective assistance of counsel. Respondent contends that Petitioner procedurally defaulted on this claim because he raised it for the first time in a successive post-conviction motion for relief from judgment and the trial court and the Michigan appellate courts relied on MCR 6.502(G)—a valid state procedural rule—to reject Petitioner's post-conviction motion.

When the state courts clearly and expressly rely on a legitimate state procedural rule to bar a claim, federal habeas review is also barred unless the petitioner can demonstrate cause for the default and actual prejudice because of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). However, in an extraordinary case where a constitutional error has likely resulted in the conviction of an individual who is actually innocent, a federal court may consider the constitutional claims presented even if the petitioner does not show cause for the procedural default. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

MCR 6.502(G)(1) provides that except as outlined in subrule (G)(2) "one and only one motion for relief from judgment may be filed with regard to a conviction." *Accord Banks v. Jackson,* 149 F. App'x 414, 418 (6th Cir. 2005). MCR 6.502(G)(2) allows a defendant to file a second or

26

subsequent motion in two situations: if the motion is based on a retroactive change in law that occurred after the first motion for relief from judgment was filed or if evidence discovered after the first such motion supports the claim. *See id*. Although "[t]he court may waive the provisions of [MCR 6.502(G)] if it concludes that there is a significant possibility that the defendant is innocent of the crime." MCR 6.502(G)(2).

Michigan courts rejected Petitioner's successive ineffective assistance of counsel claim for failure to call alibi witnesses under MCR 6.502(G)(2), a valid state procedural rule at the time Petitioner filed his motion. *See Maslonka v. Hoffner,* 900 F.3d 269, 276 (6th Cir. 2018) (rejecting habeas relief for ineffective assistance of counsel claim procedurally defaulted under MCR 6.502(G)). The state courts rejected Petitioner's successive motion for relief from judgment—raising the ineffective assistance of counsel claim he includes in his amended habeas petition—under MCR 6.502(G) because he failed to raise a claim based on a retroactive change in the law or present newly discovered evidence to the trial court. (*See* ECF Nos. 32-20, 32-21; *People v. Jackson*, 507 Mich. at 931.)

In the amended habeas petition, Mr. Jackson fails to establish good cause for his procedural default in state court. Indeed, Mr. Jackson does not address why he failed to raise his ineffective assistance of counsel claim regarding the failure to call alibi witnesses in his first motion for relief from judgment. (*See* ECF No. 22, PageID.1101–1102.)

Petitioner has not established that a fundamental miscarriage of justice has occurred, either. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of a person who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Petitioner's claim that several witnesses were willing to provide him with an alibi for his whereabouts at the time of the shooting is not credible evidence of his actual innocence. To begin with, the proposed alibi witnesses' affidavits fail to provide an actual alibi. Although the "failure to call alibi witnesses suggests legal insufficiency," this Court

28

"cannot say that this testimony alone would have satisfied the high bar for demonstrating factual innocence." *See Bell v. Howes*, 703 F.3d 848, 855 (6th Cir. 2012). The affidavits from these proposed witnesses fail to establish the time that Petitioner arrived at the location they say would have been inconsistent with his presence at the scene of the crime.[2] (*See* ECF No. 25, PageID.1125–1129.) Therefore, the witnesses' proposed testimony does not preclude Petitioner from committing the crime. *See Reeves v. Fortner*, 490 F. App'x 766, 769–70 (6th Cir. 2012).

Moreover, courts may consider the persuasiveness of proposed new evidence to assess claims of actual innocence, and in this case, the "probable reliability" of the evidence the proposed alibi witnesses would provide is low. *Schlup,* 513 U.S. at 332. Here, neither the witnesses nor Petitioner explain why these individuals waited over six years *after* Petitioner's trial to provide an affidavit in support of an alibi defense. (*See* ECF No. 25, PageID.1125–1129.) Moreover, several affidavits

---

[2] Each of the affiants states that they will establish that on October 28, 2012, Mr. Jackson "was at a family member['s] house on 221 S. 2ST Street, Saginaw [,] Michigan, 48601, throughout the entire night and into the next day." (ECF No. 25, PageID.1125–1129.) However, the shooting in this case occurred early in the morning on October 28, 2012, before the purported alibi witnesses place him at the house at "221 S. 2ST Street."

appear to be from family members, and affidavits from family members that are created after trial are not particularly reliable evidence of actual innocence. *See Milton v. Sec'y, Dep't Of Corr.,* 347 F. App'x 528, 531–32 (11th Cir. 2009); *accord Stennis v. Place*, No. 16-CV-14262, 2018 WL 3390444, at *4 (E.D. Mich. July 12, 2018).

Accordingly, Petitioner is not entitled to relief on his final claim.

## IV. Conclusion

The petition for a writ of habeas corpus is denied with prejudice.

The Court denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or

30

wrong. *See Id*. at 484. Similarly, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons set forth in this opinion, the Court denies Petitioner a certificate of appealability because he fails to make a substantial showing of the denial of a federal constitutional right. The Court also denies Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

Accordingly, the Court **DENIES** Mr. Jackson's petition for a writ of habeas corpus with prejudice and **DENIES** a certificate of appealability.

Further, the Court **DENIES** leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: May 4, 2022                    s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2022.

                                      s/William Barkholz
                                      WILLIAM BARKHOLZ
                                      Case Manager